Dear Chair Bullard
¶ 0 This office has received your request for an official Attorney General Opinion asking the following question:
When an appointment to a public office, such as a boardmember, requires both gubernatorial nomination and Senateconfirmation, under what circumstances may the gubernatorialnominees serve prior to Senate confirmation?
 I.
¶ 1 The question you ask deals with an area of law in which, over the years, there has been some confusion, partially because there are two situations in which the Governor makes an appointment. Appointments to public office are made in two separate circumstances:
1. At the expiration of a term of office, and
2. When a vacancy occurs during a term of office.
¶ 2 Each type of appointment is analyzed separately.
 II. APPOINTMENTS AT THE EXPIRATION OF A TERM OF OFFICE
¶ 3 Under the specific provisions of Article XXIII, § 10 of the Oklahoma Constitution, incumbent office holders are authorized to hold over and continue to serve until their successors are duly qualified. The specific language of Section 10, which authorizes hold over public offices provides that:
 [A]ll officers within this State shall continue to perform the duties of their offices until their successors shall be duly qualified.
Okla. Const. art. XXIII, § 10.
¶ 4 Attorney General Opinion 76-257 considered whether an appointee of the Governor to the Board of Regents for Agricultural Mechanical Colleges and Schools could assume the duties of an office before his confirmation by the Senate. The Attorney General concluded that the appointee could not assume the duties of office. Referencing the above-quoted provision in Article XXIII, the Attorney General concluded that because, under the constitutional provision, the incumbent office holder would continue to perform the duties of office after the expiration of his term until his successor was "duly qualified," it was necessary to determine whether an appointee, "in the absence of Senate confirmation of such appointment," was "duly qualified." In construing the phrase "duly qualified," the Attorney General turned to the Oklahoma Supreme Court's opinion in Coyle v.Smith, 113 P. 944 (Okla. 1911), in which the Court construed the intent of the proviso that all officers within the State shall continue to perform the duties of their office until their successors shall be duly qualified:
 The proviso . . . is intended to cover exigencies arising from a failure in an election or appointment, or after an election or appointment being had or made the officer fails to qualify, in which event the incumbent of such office should hold [over] until such qualification was made, showing the abhorrence of the framers of the Constitution of bringing about an interregnum.
Coyle, 113 P. at 947.
¶ 5 Concluding his opinion, the Attorney General held that it was clear that the Oklahoma Supreme Court in Coyle considered the phrase "duly qualified" in Section 10, of Article XXIII to mean: a properly elected or appointed successor to an office who has taken the oath of office prescribed by Section 1, Article XV
of the Oklahoma Constitution. The Attorney General thus opined that because an appointee, whose appointment is subject to Senate confirmation is not eligible to take the oath of office until he or she has been confirmed, such an appointee could not qualify to assume the duties of the office until confirmation had taken place:
 Concerning a successor to a member of the Board of Regents for the Oklahoma Agricultural and Mechanical Colleges and Schools, appointed during the legislative session, it would follow that under Section 31a of Article VI such individual's appointment would have to be confirmed by the Senate before such individual is even eligible to take the oath of office. Thus, under those circumstances, such individual could not serve as a member of the Board of Regents.
A.G. Opin. 76-257, p. 279 (emphasis added).
¶ 6 Three years later, in Opinion 79-243, the Attorney General came to a similar conclusion in determining whether a member of the State Board for Property and Casualty Rates, whose term had expired, retained the authority to perform the duties of his office until confirmation of his successor by the State Senate. In concluding that the incumbent, under the provisions of the Article XXIII, § 10, was to continue to perform the duties of office until his successor was appointed and confirmed by the Senate, the Attorney General "withdr[ew] and overruled" an intervening opinion, Opinion 78-168. In that withdrawn opinion, the Attorney General had concluded that when an incumbent office holder's term expires and the Governor appoints a replacement, whose appointment is subject to confirmation by the Senate, if the successor is appointed during a session of the Senate, the incumbent would continue to serve. On the other hand, that withdrawn opinion concluded that if an appointment was made during recess of the Senate, the incumbent member at that time ceased to hold office. In withdrawing and overruling this opinion, the Attorney General abandoned a position that appointments subject to Senate confirmation, made when the Legislature is "in recess," authorized the new appointee to begin performing the duties of office in the incumbent's stead. This mistaken position was also taken in Attorney General Opinion 72-256, which should also have been overruled and withdrawn.
¶ 7 The mistaken conclusion reached in Attorney General Opinions 78-168 (withdrawn by Opinion 79-243) and 72-256, was that Oklahoma law provides for "recess appointments," under which an appointment made when the Legislature is not in session results in an interim appointment which allows the appointee to immediately begin serving in office.
¶ 8 In reaching this mistaken conclusion, neither of these opinions considered the Oklahoma Supreme Court case that held to the contrary, State v. Frame, 134 P. 403 (Okla. 1913). Unlike the United States Constitution and the laws of many of our sister states, Oklahoma law does not, as these opinions concluded, provide for "recess appointments." This was made clear by the Oklahoma Supreme Court in Frame. The conclusion that one appointed to an office which requires Senate confirmation may begin serving on an interim basis if appointed when the Legislature is in recess, in the Court's words, is "based upon the erroneous belief" that Oklahoma has "a statute or constitutional provision which approximates that part of section 2 of article 2 of the federal Constitution which provides that `the President shall have power to fill up all vacancies that may happen during the recess of the Senate by granting commissions which shall expire at the end of their next session.'"134 P. at 404. The Frame Court went on to conclude that Oklahoma has "nolaw which specifically provides for recess appointments for thepurpose of filling vacancies." Id. (Emphasis added.)
¶ 9 Because Oklahoma law has no provision for recess appointments, there is no valid ground for distinguishing between appointments made during legislative session and during legislative recess. Accordingly, the above-referenced opinions which treated appointments made when the Legislature was in recess differently from those made when the Legislature was in session, were in error.
¶ 10 In 1983, the Attorney General, in Opinion 83-228, was again asked to consider the question regarding the status of an appointee to a position required to be confirmed by the Senate. In concluding that such an appointee was not entitled to begin serving until confirmed by the Senate, the Attorney General quoted with approval from the Arizona Supreme Court's opinion inMcCall v. Cull, 75 P.2d 696, 699 (Ariz. 1938). In McCall, the Arizona Supreme Court held that appointment to the Arizona Livestock and Sanitary Board, which required Senate confirmation, took the concurrence of both the Governor and the Senate, and that accordingly a nominee only appointed by the Governor, and not yet confirmed by the Senate, was not entitled to assume the duties of the office:
 Under this statute, his [the Governor's] power to appoint is in conjunction with the Senate. The two must concur. The Governor cannot exercise the power alone. He may put into motion this joint power by first appointing the officer, but such appointment is ineffective until and unless ratified or confirmed by the Senate. The abstract rule is well stated in 22 Ruling Case Law, 433, § 84, as follows:" Wherever under a constitutional or statutory provision the appointment is required to be made with the approval of some officer or body, such appointment must be approved before the person is legally entitled to the office. If on the expiration of the term of a public office, an appointment of a successor is made by the governor but it is not confirmed by the state senate as required by a law of this type such successor does not obtain the right to enter on the duties of the office but the former incumbent may hold over until a successor is properly appointed and confirmed."
A.G. Opin. 83-228, p. 429, quoting McCall v. Cull, 75 P.2d 696,699 (Ariz. 1938) (emphasis added).
¶ 11 Oklahoma law, as expressed in the above-referenced Attorney General Opinion, requires that when the Governor makes an appointment to an office due to the expiration of anincumbent's term of office,, and the appointment is subject to Senate confirmation, the new appointee is not eligible to assume the duties of office until he or she has been confirmed by the Senate.
¶ 12 The law treats appointments made when a vacancy occursduring a term of office differently.
 III. VACANCY APPOINTMENT
¶ 13 Under the provisions of 51 O.S. 1991, § 8[51-8], a vacancy before the expiration of a term of office occurs upon death or resignation of the incumbent, removal of the incumbent from office, his failure to qualify, when the incumbent ceases to be a resident of the State, and other listed events which have the effect of removing the incumbent from office. Article VI, § 13 of the Oklahoma Constitution empowers the Governor to fill vacancies in State offices, providing in pertinent part as follows:
 When any office shall become vacant, he shall, unless otherwise provided by law, appoint a person to fill such vacancy, who shall continue in office until a successor shall have been duly elected or appointed, and qualified according to law.
Okla. Const. art. VI, § 13 (emphasis added).
¶ 14 In State v. Frame, 134 P. 403 (Okla. 1913), Governor Lee Cruce had appointed Frame to fill a vacancy on the State Board of Public Affairs due to the resignation of an incumbent board member. Under the applicable statutory law, appointment to that board required Senate confirmation. The Senate, however, refused to "consent" to Frame's appointment. When Frame continued to sit on the board after the Senate refused to confirm, the State, through the Attorney General, brought a quo warranto action, claiming that Frame held the office unlawfully because the Senate had refused to confirm his appointment.
¶ 15 Relying on the Governor's power under Article VI, § 13 to fill the vacancy, the Oklahoma Supreme Court concluded that such appointments, because statutory law had not provided for recess appointments, did not require Senate confirmation, and that Frame once appointed, could continue to serve:
 We, therefore, conclude that section 13, article 6, of the Constitution, and section 4798, Comp. Laws Okl. 1909, are the only acts in force in this state which provide for filling public offices when the same "shall become vacant"; that said sections, when construed together, constitute a complete and harmonious method for accomplishing that purpose; that by virtue of said sections, when any state office shall become vacant, it is the duty of the Governor "to appoint a person to fill such vacancy who, (if the office is one which the law requires to be filled by appointment), shall continue in office until a successor shall have been duly * * * appointed and qualified according to law." Said sections do not authorize or require such an appointment to be "by and with the advice and consent of the Senate."
134 P. at 405 (emphasis added).
¶ 16 In 1987, the Attorney General issued Opinion 87-67, which relied on Frame, and concluded that when the Governor fills avacancy the advice and consent of the Legislature is not required. The issues dealt with in that opinion involved the appointment of an Executive Director of the Oklahoma Ethics Commission. The appointment in question was made when the initial director resigned prior to the expiration of his term, thus creating a vacancy in office.
¶ 17 In an apparent response to the Attorney General Opinion, the Legislature, during the next legislative session, in accordance with its powers under the provisions of Article VI, § 13, to "otherwise provide by law," enacted the provisions of74 O.S. 1991, § 2.2[74-2.2]. That new statute made a profound change in the law. The new statute required that when a vacancy occurs in a position of State government and the appointment of the position for a full term would be subject to confirmation by one or both houses of the Legislature, "such confirmation shall be required for the appointment to fill a vacancy for the unexpired term."
¶ 18 In subsection B of Section 2.2, the Legislature did, however, provide for a mechanism to enable the Governor — at his or her discretion — to designate a nominee as "acting or interim" providing that:
 A person whose nomination has been submitted to the Legislature may be appointed to hold such office on an acting or interim basis and may assume the duties of the office and receive any compensation or travel reimbursement allowed by law for the position pending confirmation by one or both houses of the Legislature. No person whose nomination has been withdrawn by the Governor or other appointing authority after the effective date of this act or rejected by one or both houses of the Legislature
after the effective date of this act shall be eligible to hold such office on an acting or interim basis. Provided, such person shall be eligible for acting or interim appointment if requested by the appropriate house or houses of the Legislature.
74 O.S. 1991, § 2.2[74-2.2](B) (emphasis added).
¶ 19 By virtue of the statute, when a vacancy in public officeexists, and an appointment for a full term in that office would require confirmation by one or both houses of the Legislature, confirmation is now required before the appointee may assume the duties of office unless the Governor exercises his or her discretion by indication that the appointee is to serve on an acting or interim basis. Under the statute interim service is not automatic; the Governor in making an appointment must affirmatively indicate, in the appointment document, that the nominee is being appointed to act on an acting or interim basis. Under the provisions of 74 O.S. 1991, § 2.2[74-2.2], such interim appointments are only available when a vacancy occurs during a term of office, and are not available when an appointment is made at the expiration of an incumbent's term. In such instances, the incumbent holds over until the Governor's nominee is confirmed and duly qualified.
¶ 20 A nominee appointed to serve on an acting or interim basis, whose nomination is either withdrawn by the Governor or other appointing authority or whose nomination is rejected by the Senate (or House where applicable), is ineligible to serve on an acting or interim basis unless "requested [to do so] by the appropriate house or houses of the Legislature." 74 O.S. 1991, §2.2[74-2.2](B).
¶ 21 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. When the Governor makes an appointment to an office due tothe expiration of an incumbent's term of office and theappointment is subject to Senate confirmation, the new appointeeis not eligible to assume the duties of office until he orshe has been confirmed by the Senate, and has been dulyqualified.
 2. When the Governor makes an appointment to an office due toa vacancy that has occurred during a term of office, and theappointment is subject to confirmation by either the Senate orHouse, the appointment is subject to confirmation. However, theGovernor, under the provisions of 74 O.S. 1991, § 2.2[74-2.2], may,at his or her discretion, appoint the nominee to serve on aninterim basis pending such confirmation, by affirmativelyindicating his or her desire that the nominee serve on an interimbasis in the appointment document.
 3. Interim appointments under the provisions of 74 O.S.1991, § 2.2[74-2.2] are only available when a vacancy occurs during aterm of office. Interim appointments are not available when anappointment is made at the expiration of an incumbent's term; insuch instances, the incumbent holds over until the Governor'snominee is confirmed and duly qualified.
 4. Under the provisions of 74 O.S. 1991, § 2.2(B) anominee appointed to serve on an acting or intermin basis, whosenomination is either withdrawn by the Governor or otherappointing authority or whose nomination is rejected by theSenate (or House where applicable), is ineligible to serve on anacting or interim basis unless "requested [to do so] by theappropriate house or houses of the Legislature."
 5. Attorney General Opinion 72-256, which mistakenly concludedthat Oklahoma law provided for "recess appointments," iswithdrawn.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
NEAL LEADER SENIOR ASSISTANT ATTORNEY GENERAL